UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD LONGENECKER,

 Plaintiff,

v.                  Case No:   2:13-cv-17-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

 Defendant.

## OPINION AND ORDER

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on January 9, 2013. Plaintiff, Richard Longenecker seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **Reversed and Remanded** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

 **I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

 **A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B. Procedural History

On July 23, 2010, Plaintiff filed an application for Disability Insurance Benefits asserting a disability onset date of October 15, 2009. (Tr. p. 79). Plaintiff's application was denied initially on September 3, 2010, and denied upon reconsideration on November 2, 2010. (Tr. p. 65-66). A hearing was held before Administrative Law M. Dwight Evans ("ALJ") on June 21, 2011. (Tr. p. 27-47). The ALJ issued an unfavorable decision on July 15, 2011. (Tr. p. 13-21). On November 5, 2012, the Appeals Council denied Plaintiff's request for review. (Tr. p. 1-6). The Plaintiff filed a Complaint (Doc. 1) in the United States District Court on January 9, 2013. This case is now ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 16).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, ___ Fed. App'x. ____, 2013 WL 5788574 (11th Cir. Oct. 29, 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of

proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 Fed. App'x. 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the Social Security Act's insured status requirements through December 31, 2014. (Tr. p. 15). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2009, the alleged onset date. (Tr. p. 15). At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: obesity and sleep apnea citing 20 C.F.R. §404.1520(c). (Tr. p. 15). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526. (Tr. p. 16). At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work. (Tr. p. 17). The ALJ limited Plaintiff to never climbing ladders, ropes and scaffolds; to avoiding all exposure to extreme hot and cold and fumes, odors, dusts, gases, and poor ventilation; and, to avoiding even moderate exposure to hazards such as machinery and unprotected heights. (Tr. p. 17). The ALJ determined that Plaintiff could return to his past relevant work as a high school teacher, because this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (Tr. p. 20). The ALJ concluded that Plaintiff is not under a disability as defined in the Social Security Act, from October 15, 2009 through the date of the decision. (Tr. p. 21).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether

the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff raises two issues on appeal. As stated by Plaintiff, they are: (1) whether the ALJ improperly discounted the opinion of Plaintiff's treating doctors; and (2) whether the ALJ failed to make specific findings as to Plaintiff's past work and his ability to perform the same.

**A. Opinions of Treating Physicians**

Plaintiff argues that in finding that Plaintiff was able to perform a full range of light work and return to his past relevant work as a high school teacher, the ALJ erred in discounting the opinions of treating physicians, Drs. Alokeh, Altajar and Berry. Plaintiff argues that Dr. Alokeh

consistently found that Plaintiff suffered from sleep apnea, transient ischemic attacks with associated fatigue and weakness, and opined that Plaintiff was not able to work. On January 11, 2011, Dr. Alokeh wrote an opinion letter indicating that Plaintiff was unable to work.

Plaintiff asserts that in March and August 2010, Dr. Altajar assessed Plaintiff with severe obstructive sleep apnea and excessive sleepiness and fatigue and would not clear Plaintiff to drive a car or return to work. In October 2010, Dr. Altajar opined that Plaintiff should avoid significant activities, and in March 2011 found that Plaintiff was unable to function.

Plaintiff argues that Dr. Berry diagnosed Plaintiff with severe obstructive sleep apnea, excessive daytime sleepiness, a history of cerebrovascular accident, hypertension, and obesity. Plaintiff argues that Dr. Berry wrote a letter on Plaintiff's behalf dated January 25, 2011 indicating that Plaintiff was very ill with multiple medical problems including morbid obesity, severe obstructive sleep apnea, severe daytime sleepiness, depression and neurosis, and status post cerebrovascular accident. Plaintiff contends that Dr. Berry also stated that Plaintiff has not been able to function at any time.

The Commissioner responds that the ALJ's Decision is supported by substantial evidence. The Commissioner argues that the ALJ considered all of the records of Drs. Alokeh, Altajar and Berry, and found their opinions that Plaintiff was not able to work to be inconsistent with the medical records as a whole, including their own treatment notes. The Commissioner contends that the ALJ discussed both the favorable and unfavorable evidence presented and determined an RFC of light work was supported by substantial evidence.

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that

whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In the instant case, Wael Alokeh, M.D., one of Plaintiff's treating physicians saw Plaintiff on September 23, 2009 and diagnosed him with hyperlipidemia, hypertension, and unspecified sleep apnea. (Tr. p. 481). Dr. Alokeh determined that Plaintiff should not drive because he was sleeping while he drove. (Tr. p. 482). On October 19, 2009, Plaintiff visited Dr. Alokeh for blurred vision, numbness and weakness in his lower extremities. (Tr. p. 479). Plaintiff was hospitalized for the weakness on October 28, 2009, and reported weakness on November 9, 2009, February 22, 2010, and August 10, 2010. (Tr. p. 469, 475, 477, 480, 527). Plaintiff was diagnosed with recurrent TIA, or small strokes. (Tr. p. 471). On August 10, 2010, Dr. Alokeh determined that if Plaintiff lost weight then hopefully his sleep apnea would improve and he could return to work, if not then he would be on disability. (Tr. p. 527). Dr. Alokeh

determined that Plaintiff was not able to work as of August 10, 2010.  (Tr. p. 528). On January 14, 2011, Dr. Alokeh then wrote a letter indicating that Plaintiff was diagnosed with depression, morbid obesity, hypertension, fatigue, hyperlipidemia, TIA's, memory loss and sleep apnea. (Tr. p. 542). Dr. Alokeh concluded that Plaintiff "is unable to work due to the severity of his medical problems at the present time." (Tr. p. 542).

On April 1, 2009, the Plaintiff saw Bassam Altajar, M.D., a cardiologist who diagnosed Plaintiff with severe obstructive sleep apnea, morbid obesity, hypertension, hyperlipidemia, right bundle branch block, fatigue, leg edema, hypertension, and hyperlipidemia.  (Tr. p. 422). On August 29, 2009, Dr. Altajar noted that Plaintiff complained of excessive daytime sleepiness, and in the afternoon of being unable to stay awake.  (Tr. p. 417).  Dr. Altajar recommended Plaintiff see an ear, nose and throat specialist for the sleep apnea.  (Tr. p. 491). On September 9, 2009, Dr. Altajar noted that Plaintiff was struggling with the sleep apnea, would fall asleep during the day, was unable to work, and was struggling with driving.  (Tr. p. 416).  Plaintiff was struggling with the CPAP and BiPAP machines.  (Tr. p. 415).  On September 30, 2009, Dr. Altajar instructed Plaintiff not to drive because of his problems with staying awake during the day, and restricted working to the mornings until his sleep issues were evaluated.  (Tr. p. 412). On October 29, 2009, December 23, 2009, and March 24, 2010, Plaintiff complained of weakness on the left side, and began using a cane.  (Tr. p. 401, 405, 409). Plaintiff also complained of daytime sleepiness, and no longer drove during the day.  (Tr. p. 401, 405).  On April 28, 2010, Plaintiff did feel better because he could use the BiPAP more, however he was still unable to work or drive.  (Tr. p. 397). Plaintiff continued to complain of being tired during the day through March 2011, and Dr. Altajar determined that Plaintiff should avoid any significant activities, and was unable to work or drive.  (Tr. p. 395, 584, 585, 589, 596, 597,

600, 628). On January 19, 2011, Dr. Altajar wrote a letter diagnosing Plaintiff with severe obstructive and central sleep apnea, hypertension, hyperlipidemia, pulmonary hypertension, and morbid obesity. (Tr. p. 543).

On September 18, 2009, Plaintiff saw Richard Barnett Berry, M.D. at Shands Hospital who diagnosed Plaintiff with severe obstructive sleep apnea, and with being intolerant of the use of CPAP or BiPAP. (Tr. p. 390-91). Dr. Berry suggested a sleep study. (Tr. p. 390-91). On October 13, 2009, a Polysomnography Report was completed. (Tr. p. 388). The impression was severe obstructive sleep apnea, severe daytime sleepiness, inability to tolerate APAP in the past, morbid obesity, restless leg syndrome, and severe daytime sleepiness which improved slightly with the use of modafinil. (Tr. p. 359). Dr. Berry told Plaintiff on November 29, 2009 that his sleep apnea was life-threatening, and on February 16, 2010 told him that if he did not use the CPAP, then Plaintiff was at risk for sudden death or another stroke. (Tr. p. 350, 352). On April 21, 2010, Dr. Berry released Plaintiff to return to work part-time in August. (Tr. p. 349). On January 29, 2011, Plaintiff completed a sleep study, and the Sleep Study Report indicated severe obstructive sleep apnea, severe in frequency. (Tr. p. 570-71). Dr. Berry recommended weight loss. (Tr. p. 570-71). On January 25, 2011, Dr. Berry wrote a letter indicating that Plaintiff suffered from multiple medical problems including morbid obesity, severe obstructive sleep apnea with severe daytime sleepiness, and depression and neurosis. (Tr. p. 544). Dr. Berry concluded that Plaintiff "has not been able to function at any time [sic] of employment." (Tr. p. 544). Dr. Berry discussed that Plaintiff's depression may be linked to his eating habits and inability to lose weight. (Tr. p. 544).

The ALJ rejected the opinions of Drs. Alokeh, Altajar and Berry that the Plaintiff was unable to return to work. The ALJ reviewed Dr. Wael Alokeh's opinions that Plaintiff is a

candidate for work and suggested that Plaintiff become more active, lose weight, and hoped that these steps would improve Plaintiff's sleep apnea. (Tr. p. 19). The ALJ accepted Dr. Alokeh's opinion from his treatment notes but did not accept Dr. Alokeh's conclusion found in a letter dated January 14, 2011, that Plaintiff is unable to work due to the severity of his medical problems which the ALJ found to be in direct contradiction of the treatment notes and inconsistent with the medical evidence as a whole. (Tr. p. 19). Likewise, in his notes, Dr. Altajar concluded that Plaintiff should avoid any significant activities and is unable to return to work due to his morbid obesity which Dr. Altajar suggested may be the underlying cause of Plaintiff's medical problems. Dr. Berry also concluded that Plaintiff was not able to function at any type of employment due mainly to his sleep apnea.

In rejecting these opinions, the ALJ indicated that he relied heavily on the opinion of Saeed Shahzad, M.D. a neurologist. (Tr. p. 19, 552-553). Dr. Shahzad worked for Neurology, P.A. Prior to Dr. Shahzad joining the practice, Plaintiff went to see George Li, M.D. of Neurology, P.A. on March 18, 2009. Plaintiff complained of short-term memory loss with confusion. (Tr. p. 291). Dr. Li determined that one possible cause of his short-term memory loss is his chronic sleep apnea which can cause chronic hypoxia to the brain cells. (Tr. p. 290). After having a PET scan, Dr. Li determined on April 24, 2009, that there was no evidence of Alzheimer's disease, and most likely Plaintiff's symptoms were caused by severe sleep apnea from chronic hypoxia to the brain cells. (Tr. p. 289). Dr. Li recommended Plaintiff lose weight and improve sleep by working with a pulmonologist. (Tr. p. 289). On November 3, 2009, Plaintiff began seeing Dr. Shahzad for weakness in his left upper and lower extremities and shaking spells. (Tr. p. 288). Dr. Shahzad determined that Plaintiff probably had a stroke that left him weak on the left side. (Tr. p. 287). Dr. Shahzad determined that Plaintiff had multiple risk

factors "including obesity, hypercholesterolemia, and past TIA. He is at risk of stroke. I have discussed with him about carotid artery narrowing and risks of stroke. At this point in time, he is symptomatic with carotid artery narrowing under 50%." (Tr. p. 287). Dr. Shahzad ordered an MRI of the brain, physical therapy, occupational therapy for his left side, and a cane to help him ambulate. (Tr. p. 287). On December 14, 2009, Plaintiff went to Dr. Shahzad complaining of weakness in his right upper and lower extremities, and severe pain in the back of his head and neck. (Tr. p. 286). Dr. Shahzad ordered an MRI of the neck, a cardiac echo, and noted that Plaintiff had a breakthrough TIA even while on medication. (Tr. p. 285). On December 30, 2009, Plaintiff went to Neurology, P.A. because he suffered left-side weakness, loss of balance, blurred vision, and a tingle in his left arm. (Tr. p. 284). Plaintiff was seen by Lynn Stengel, ARNP, in consultation with Dr. Montoya and she ordered a brain MRI immediately, and the results were normal. (Tr. p. 282). Plaintiff was informed of the symptoms of stroke and advised to go to the hospital if these symptoms occurred. (Tr. p. 282). On January 5, 2010, Plaintiff returned to Dr. Shahzad complaining of numbness and tingling in his left upper and lower extremities, and some visual disturbances. (Tr. p. 281). Plaintiff's MRI of the C-spine, MRI of the brain, carotid ultrasound, cardiac echo, and coagulation studies were nearly within normal range, but Plaintiff has multiple risk factors for TIAs and strokes. (Tr. p. 280). On April 23, 2010, Dr. Shahzad recommended Plaintiff lose weight which would be helpful for his sleep apnea and decrease his risk of stroke. (Tr. p. 278).

Dr. Shahzad stated on July 22, 2010, "[t]he patient asked me to write a note so he can go back to work. I have discussed with him in detail and I asked him to consult with the doctor who has issued a note that you should not go to work. In my opinion the patient is able to return to work. If the work does not involve driving and operating heavy machinery or lifting heavy

weights. The patient has no other complaints." (Tr. p. 552). On October 21, 2010 and January 20, 2011, Plaintiff saw Dr. Shahzad, and Dr. Shahzad continued with the same treatment plan.

In the instant case, the ALJ failed to provide specific reasons for rejecting the opinions of Drs. Alokeh, Altajar, and Berry and only accepting the opinion of Dr. Shahzad. The Court recognizes that "[a] conclusion as to whether an individual is disabled or has the ability to work is essentially legal rather than medical. It is not the type of medial opinion to which the Commissioner gives controlling weight." *Williams v. Astrue*, 2009 WL 413541, *2 (M.D. Fla. Feb. 18, 2009) (internal quotation marks omitted) (citing *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)).

Dr. Berry determined Plaintiff had severe obstructive sleep apnea with severe daytime sleepiness and that the sleep apnea could be fatal. Dr. Alokeh determined that if Plaintiff lost weight then hopefully his sleep apnea would improve and he could return to work, if not then he would be on disability.[1] Likewise, Dr. Altajar relied on his medical records in determining that Plaintiff's symptoms including weakness and sleepiness would preclude him from working.

Drs. Alokeh, Altajar and Berry, as treating physicians, all determined that Plaintiff has severe sleep apnea, a history of TIAs, and morbid obesity. All of these treating physicians also noted Plaintiff's TIAs caused weakness in various extremities and were occurring frequently. These physicians also noted that Plaintiff was unable to stay awake during the daytime due to his severe sleep apnea. These treating physicians' records support their opinions as to Plaintiff's

---

1 All of the doctors agree that Plaintiff's medical conditions would most likely improve if he would lose weight. In a case involving obesity, "[a] physician's recommendation to lose weight does not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake such treatment." *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988) (*per curiam*).

ability to function and to work. The ALJ concluded that Drs. Berry Alokeh and Altajar's opinions are entitled to no weight and are not supported by and are inconsistent with the medical evidence of record, but the ALJ failed to indicate how their opinions are inconsistent or not supported by their own the medical records and evidence in the record. Further, the ALJ finds that Drs. Berry and Altajar rendered opinions outside of their expertise, but failed to elaborate on which findings are outside of their area of expertise.

As to Dr. Shahzad, the ALJ relied heavily on his opinion but failed to indicate how Dr. Shahzad's records support his opinion. Plaintiff specifically asked Dr. Shahzad to write a note indicating he could return to work. Dr. Shahzad's opinion as to Plaintiff's ability to work was contingent upon Plaintiff's other treating physicians' opinions. Dr. Shahzad required Plaintiff to return to the doctor (namely Drs. Alokeh, Altajar, and Berry) who determined that Plaintiff was not able to work and discuss the situation with that doctor. Then Dr. Shahzad stated that in his opinion, Plaintiff is able to return to work. Dr. Shahzad failed to indicate how Plaintiff with his severe sleep apnea, frequent TIA's, morbid obesity, and occasional weakness in extremities was able to return to work as a high school teacher.

The Court does not find that the ALJ articulated how Drs. Alokeh, Altajar, and Berry's medical records and opinions as to Plaintiff's medical complaints conflicted with their opinion as to Plaintiff's ability to work or were not supported by their medical records. The Court also finds that the ALJ failed to articulate how Dr. Shahzad's records support his opinion that Plaintiff can return to work. The Court is unable to conduct a meaningful judicial review of the ALJ's opinion concerning his conclusion that Drs. Alokeh, Altajar, and Berry's opinions should not be given great weight and that Dr. Shahzad's opinion is the only medical opinion that should be given great weight. *See, Robinson v. Astrue*, 2009 WL 2386058, *4 (M.D. Fla. Aug. 3,

2009). The Court finds that the ALJ erred in giving no weight to the opinions of treating physicians Dr. Alokeh, Altajar and Berry, and great weight to the opinion of Dr. Shahzad.

### B. Past Work

The ALJ determined that Plaintiff is capable of performing his past relevant work as a high school teacher, and that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. p. 20). The ALJ determined that Plaintiff has the RFC to perform the full range of light work but can never climb ladders, ropes, and scaffolds, must avoid all exposure to extreme hot and cold fumes, odors, dusts, gases, and poor ventilation, and must avoid even moderate exposure to hazards such as machinery and unprotected heights. (Tr. p. 17).

The Plaintiff asserts that the ALJ failed to comply with SSR 82-62. SSR 82-62 requires the ALJ to make the "following specific findings of fact: 1. A finding of fact as to the individual's RFC. 2. A finding of fact as to the physical and mental demands of the past job/occupation. 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation." The Plaintiff contends that the ALJ failed to include in his decision a finding of fact as to the physical and mental demands of Plaintiff's past job as a high school teacher. The Commissioner argues that the ALJ considered the <u>Dictionary of Occupational Titles</u> (DOT) in determining that Plaintiff can return to his past relevant work as a teacher. The DOT categorizes the job of teacher as light exertional level and is considered skilled work.

An ALJ must consider all of the duties of a plaintiff's past relevant work and evaluate a plaintiff's ability to perform that work in spite of his impairments. *Levie v. Comm. of Soc. Sec.*,

514 Fed. App'x. 829, 830 (11th Cir. 2013). At the fourth step of the sequential evaluation, the burden lies with Plaintiff to show that he cannot return to his past relevant work. *Battle v. Id., Astrue*, 243 Fed. App'x. 514, 522 (11th Cir. 2007). The ALJ reviewed the requirements of Plaintiff's past relevant as a teacher by utilizing the DOT. The ALJ failed to articulate that he considered all of the duties of Plaintiff's past work as a teacher, and failed to indicate how Plaintiff's limitations, especially that he is unable to remain awake throughout the day, would allow him to continue working as a high school teacher. The Court finds that the ALJ failed to make specific findings at Step 4.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence. The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the opinions of the treating physicians and determine if Plaintiff's residual functional capacity will allow him to return to his past relevant work. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 13, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties